# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

GEORGE WILLIAMS,

                  Petitioner,

          -vs-

DAVID BOBBY, Warden,

                  Respondent.

:

:

:

:

Case No. 1:09-cv-317

District Judge Michael R. Barrett
Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

This habeas corpus case is before the Court for decision on the merits. Petitioner pleads the following grounds for relief:

> **Ground One:** The use of a co-defendant's statements implicating Mr. Williams as the shooter, without her testimony at trial, violated his right to confrontation, and was prejudicial because of the limited amount of other witnesses and their serious credibility problems.
>
> **Supporting Facts:** Testimony noted that Mary Rosemond (a co-defendant) had accused George Williams of being the shooter in the incident. Mary Rosemond never testified directly. These statements were either made while in police custody or in response to a police request for assistance. The other facts supporting the claim that Mr. Williams was the shooter came from the other co-defendant (Andre Woodcock). Mr. Woodcock stated on cross-examination that he shouldn't be believed and that he would do whatever it took to get a deal.
>
> **Ground Two:** Mr. Williams was denied his right to a fair trial and to counsel when statements he made while under custodial interrogation were introduced against him despite his unambiguous request for counsel.
>
> **Supporting Facts:** Mr. Williams was arrested and interrogated at the police station. Upon being read his rights, he requested an attorney.

-1-

Then, one of the interrogating police officers explained how he "felt" the court process would go. Directly after that another officer entered the room with Mr. Williams's prison clothes, and Mr. Williams requested to speak with him. Mr. Williams then made statements that were used against him at trial.

**Ground Three:** A defendant is deprived of the effective assistance of appellate counsel when appellate counsel fails to raise reversible errors on appeal.

**Supporting Facts:** Ground one was not raised on Mr. Williams's direct appeal to the First District Court of Appeals.

**Ground Four:** A defendant is deprived of the effective assistance of counsel when trial counsel fails to object to each of the violations of Mr. Williams's confrontation rights at trial. The deprivation is particularly clear when trial counsel had already been informed that the witness would not testify, yet still failed to object subsequent violations.

**Supporting Facts:** Andre Woodcock testified to Mary Rosemond's statement without objection from trial counsel. Subsequently, the State informed counsel that Mary Rosemond would not be testifying. After than, Detective Pitchford testified to the contents of Mary's statements without objection. All of Mary's statements indicated that Mr. Williams was the shooter.

(Petition, Doc. No. 2, at PageID 6-10).

## Procedural History

Petitioner was indicted on July 28, 2005, on one count of aggravated murder with capital specifications and one count of aggravated robbery in Hamilton County Common Pleas Case No. B05-07085.  His co-defendants, Mary Rosemond (his sister) and Andre Woodcock, were separately indicted on the same charges but without capital specifications in Case No. B05-07457.  Petitioner was separately indicted, on facts arising out of the same crime, for having a weapon while under a

-2-

disability in Case No, B05-08494.

Petitioner's case proceeded to trial to a jury on June 30, 2006.  Woodcock made a plea agreement and testified against Williams; Rosemond had been scheduled to do so, but eventually did not.  Petitioner was convicted as charged, but with a life without parole recommendation on the aggravated murder count.  The trial judge accepted that recommendation and added ten years for the aggravated robbery, three years for the firearm specification, and five years for the weapons under disability, all to be served consecutively.

Mr. Williams appealed, raising four assignments of error, but on October 19, 2007, the Court of Appeals affirmed the conviction.  *State v. Williams,* 2007 Ohio 5577, 2007 Ohio App. LEXIS 4902 (Oct. 19, 2007).  He was granted leave to file a delayed appeal to the Ohio Supreme Court, but that Court eventually declined to exercise jurisdiction.  *State v. Williams,* 118 Ohio St. 3d 1408 (2008).  While the appeal to the Ohio Supreme Court was pending, he filed an application to reopen the appeal under Ohio R. App. P. 26(B) in the Hamilton County Court of Appeals, but that court held that *res judicata* precluded reopening because the ineffective assistance of appellate counsel claim could have been raised on direct appeal to the Ohio Supreme Court (Entry Denying Application for Reopening, Ex. 22 to Return of Writ, Doc. No. 16, PageID 293). Petitioner did not appeal but filed this case on May 7, 2009.

## Analysis

## Ground One

In his First Ground for Relief, Petitioner contends use of his sister Mary Rosemond's statements at trial without her being present for cross-examination violated his rights under the

Confrontation Clause.

Respondent does not argue the merits of this claim, but instead asserts it is procedurally defaulted because (1) Petitioner's trial counsel made no contemporaneous objection to admission of Rosemond's statements and (2) this claim, although available on the record, was not raised on direct appeal (Answer/Return of Writ, Doc. No. 16, PageID 52-53.).

In his Traverse, Petitioner does not contest the factual bases of this defense to Ground One. That is, he implicitly concedes, by not contradicting, Respondent's claim that there was no contemporaneous objection and the Confrontation Clause claim was not raised on direct appeal. Instead, Petitioner asserts he properly raised this claim, albeit for the first time, in his Ohio App. R. 26(B) Application (Traverse, Doc. No. 21, PageID 305-307.)

The procedural default defense in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 749 (1991); *see also Simpson v. Jones,* 238 F. 3rd 399, 406 (6th Cir. 2000). That is, a petitioner may not raise on federal habeas a federal constitutional right he could not raise in state court because of procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107 (1982). Absent cause and prejudice, a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review. *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle v. Isaac*, 456 U.S. 107 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). *Wainwright*

-4-

replaced the "deliberate bypass" standard of *Fay v. Noia,* 372 U.S. 391 (1963).

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th Cir. 1998), citing *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *accord Lott v. Coyle*, 261 F.3d 594 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407 (2001); *Eley v. Bagley*, 604 F.3d 958, (6th Cir. 2010).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
>
> . . . .
>
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin,* 785 F.2d, at 138.

Ohio has a contemporaneous objection rule with respect to evidence proffered at trial. *State v. Glaros*, 170 Ohio St. 471, 166 N.E.2d 379 (1960), paragraph one of the syllabus; *see also State v. Mason*, 82 Ohio St. 3d 144, 162, 694 N.E.2d 932 (1998). There was no actual enforcement in this case because the place to have enforced it would have been if the Confrontation Clause claim had been raised on direct appeal despite lack of contemporaneous objection. There is no reason, however, to speculate that it would not have been enforced. Federal courts are not to assume that

state courts do not observe their own procedural bars, but instead must assume that state courts enforce those bars. *Simpson v. Sparkman*, 94 F.3d 199, 203 (6th Cir. 1996), citing *Tower v. Phillips,* 7 F.3d 206, 211 (11th Cir. 1993).

States have a very strong interest in the contemporaneous objection rule. *Scott v. Mitchell,* 209 F.3d 854 (6th Cir. 2000), quoting extensively from *Wainwright v. Sykes*, 433 U.S. 72, 88-90, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977). Ohio's contemporaneous objection rule is an adequate and independent state ground. . *Nields v. Bradshaw*, 482 F.3d 442 (6th Cir. 2007); *Biros v. Bagley,* 422 F.3d 379, 387 (6th Cir. 2005); *Mason v. Mitchell*, 320 F.3d 604 (6th Cir. 2003), *citing Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Cott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000), *citing Engle v. Isaac,* 456 U.S. 107, 124-29 (1982). *Hinkle v. Randle,* 271 F. 3d 239, 244 (6th Cir. 20o01);*Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000), citing *Engle v. Isaac,* 456 U.S. 107, 124-29 (1982).

Petitioner makes no argument about the contemporaneous objection procedural default, but instead focuses on how the Confrontation Clause claim was presented on appeal. It was not raised on direct appeal to the Hamilton County Court of Appeals (See the four assignments of error raised there, quoted in Return of Writ at PageID 45). Petitioner did raise the confrontation claim when he filed a delayed appeal in the Ohio Supreme Court; his first proposition of law was

> A defendant is denied the right of confrontation when the trial court admits the out-of-court testimonial statements of a co-defendant, when the defendant is not given the opportunity to cross-examine the out-of-court declarant. Sixth Amendment to the United States Constitution. Such a violation is not harmless error when it contributes to the defendant's conviction.

(Memorandum in Support of Jurisdiction, Ex. 17 to Return of Writ, quoted at PageID 46-47.) This Memorandum was filed February 7, 2008; three weeks before on January 17, 2008, Petitioner had claimed his direct appeal counsel was ineffective for failure to include this assignment of error on the appeal to the Court of Appeals (Application for Reopening, Ex. 20 to Return of Writ, quoted at

PageID 48.)

Petitioner's theory to defeat procedural default is that the Court of Appeals, in denying the claims presented here, "held that those claims were presentable directly to the Ohio Supreme Court." (Traverse, Doc. No. 21, PageID 305). To prove that, Petitioner cites "Document 16-1, at 228-29." *Id.* The cited reference is the Court of Appeals' Entry Denying Application for Reopening (Ex. 22 to Return of Writ, Doc. No. 16, PageID 293). Petitioner misreads the Court of Appeals decision. What it held was that Petitioner's claim of ineffective assistance of appellate counsel for not raising the Confrontation Clause claim in the Court of Appeals could be presented to the Ohio Supreme Court. It did not hold that the Confrontation Clause claim itself could be raised in the Ohio Supreme Court.

A claim of ineffective assistance of appellate counsel for not raising an assignment of error is different from a claim on the merits of the unraised assignment. The only substantive issue before an Ohio Court of Appeals on an application for reopening is whether the appellant suffered ineffective assistance of appellate counsel. It was for the purpose of facilitating decisions on that question in the Court of Appeals that the Ohio Supreme Court directed its Rules Advisory Committee to draft Rule 26(B) when it decided *State v. Murnahan*, 63 Ohio St. 3d 60, 584 N.E. 2d 1204 (1992)[1]. In considering omitted assignments of error on a Rule 26(B) application, the Court of Appeals considers the merits of the omitted assignments only to the extent of deciding whether omitting them constituted ineffective assistance of appellate counsel. There are many potential assignments of error which can be raised on appeal, but it is not ineffective assistance of appellate counsel to omit some of them. *See Jones v. Barnes*, 463 U.S. 745 (1983).

---

[1]"Neither *Murnahan* nor App. R. 26(B) was intended as an open invitation for persons sentenced to long periods of incarceration to concoct new theories of ineffective assistance of appellate counsel in order to have a new round of appeals." *State v. Reddick* 72 Ohio St.3d 88, 90-91, 1995-Ohio-249, 647 N.E.2d 784 (1995).

Thus when Petitioner asserts he brought the claims he now raises to the First District Court of Appeals in his Rule 26(B) Application (Traverse, Doc. No. 21, PageID 305), he is mistaken both factually and legally. The claims he pled in the Rule 26(B) Application were claims of ineffective assistance of appellate counsel, not the underlying Confrontation Clause claim.

Petitioner is correct in asserting that a claim of ineffective assistance of counsel in the court of appeals can be presented to the Ohio Supreme Court on further direct appeal, but that proposition is not relevant to this case. Although he did make that claim to the Ohio Supreme Court as his proposition of law 3, the Supreme Court declined to hear the case.

Petitioner claims that the Court of Appeals denial of his Rule 26(B) application on *res judicata* grounds was in error, relying on *State v. Davis,* 119 Ohio St. 3d 422, 2008 Ohio 4608, 894 N.E. 2d 1221 (2008). In *Davis* the Ohio Supreme Court stated that "the filing of a motion seeking a discretionary appeal in this Court does not create a bar to a merit ruling on a timely filed application to reopen an appeal claiming ineffective assistance of appellate counsel under App. R. 26(B)." *Id.*, syllabus.

*Davis* is parallel to this case in that Davis had raised ineffective assistance of appellate counsel claims both on direct appeal to the Supreme Court and in a timely Rule 26(B) application. *Id.* ¶ 2. After the Ohio Supreme Court declined review, the Court of Appeals declined to consider the merits of the Rule 26(B) application on the basis of *res judicata*. *Id*. ¶ 3. The Ohio Supreme Court held that the pendency of an appeal claiming ineffective assistance of appellate counsel does not deprive the court of appeals of jurisdiction to consider a Rule 26(B) application nor does the Supreme Court's declination to hear a case constitute a decision on the merits entitled to *res judicata* effect. I*d*. ¶¶ 22, 26.

Petitioner candidly admits that *Davis* was decided about six weeks after the Court of Appeals decision on his Rule 26(B) application, but he asserts that *Davis* shows his Rule 26(B) application

was not decided in the Court of Appeals on an adequate and independent state ground (Traverse, Doc. No. 21, PageID 307.)  This Court agrees.  What that would potentially save from procedural default, however, is not the Confrontation Clause claim, but the claim of ineffective assistance of appellate counsel for failure to raise a Confrontation Clause assignment of error.  See analysis of Ground Three for Relief below.  Ground One for Relief remains procedurally defaulted for lack of contemporaneous objection.

## Ground Two

In Ground Two Mr. Williams asserts he was denied a fair trial when his statements made while in custody were admitted against him despite his request for counsel (Petition, Doc. No. 2, PageID 7).

Respondent does not claim any procedural default of Ground Two, but defends on the merits the state courts' decisions on this Ground for Relief (Answer/Return of Writ, Doc. No. 16, PageID 57-64.)  Petitioner replies that the state courts' decisions on this claim were unreasonable applications of the law (Traverse, Doc. No. 16, PageID 314.)

The Supreme Court has recently elaborated on the standard of review of state court decisions on claims later raised in federal habeas corpus:

> The Antiterrorism and Effective Death Penalty Act of 1996 modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas "retrials" and to ensure that state-court convictions are given effect to the extent possible under law.  See *Williams v. Taylor,* 529 U.S. 362, 403-404, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).   To these ends, § 2254(d)(1) provides:
>
> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits

in State court proceedings unless the adjudication of the claim--
"(1) resulted in a decision that was contrary to, or involved an
unreasonable application of, clearly established Federal law, as
determined by the Supreme Court of the United States."

As we stated in *Williams,* § 2254(d)(1)'s "contrary to" and
"unreasonable application" clauses have independent meaning. 529
U.S., at 404-405, 120 S.Ct. 1495.  A federal habeas court may issue
the writ under the "contrary to" clause if the state court applies a rule
different from the governing law set forth in our cases, or if it decides
a case differently than we have done on a set of materially
indistinguishable facts. *Id.,* at 405-406, 120 S. Ct. 1495.  The court
may grant relief under the "unreasonable application" clause if the
state court correctly identifies the governing legal principle from our
decisions but unreasonably applies it to the facts of the particular
case. *Id.,* at 407-408, 120 S.Ct. 1495.  The focus of the latter inquiry
is on whether the state court's application of clearly established
federal law is objectively unreasonable, and we stressed in *Williams*
that an unreasonable application is different from an incorrect one.
*Id.,* at 409- 410, 120 S.Ct. 1495.  See also *id.,* at 411, 120 S.Ct. 1495
(a federal habeas court may not issue a writ under the unreasonable
application clause "simply because that court concludes in its
independent judgment that the relevant state-court decision applied
clearly established federal law erroneously or incorrectly").

*Bell v. Cone*, 535 U.S. 685, 693-94 (2002).

AEDPA [the Antiterrorism and Effective Death Penalty Act of 1996]
provides that, when a habeas petitioner's claim has been adjudicated
on the merits in state-court proceedings, a federal court may not grant
relief unless the state court's adjudication of the claim "resulted in a
decision that was contrary to, or involved an unreasonable application
of, clearly established Federal law, as determined by the Supreme
Court of the United States." 28 U.S.C. § 2254(d)(1). A state-court
decision is contrary to this Court's clearly established precedents if
it applies a rule that contradicts the governing law set forth in our
cases, or if it confronts a set of facts that is materially
indistinguishable from a decision of this Court but reaches a different
result. *Williams v. Taylor, supra,* at 405; *Early v. Packer,* 537 U.S. 3,
8, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) *(per curiam).* A state-court
decision involves an unreasonable application of this Court's clearly

established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner. *Williams v. Taylor, supra,* at 405; *Woodford v. Visciotti,* 537 U.S. 19, 24-25, 123 S.Ct. 357, 154 L.Ed.2d 279 (2002) *(per curiam).*

*Brown v. Payton,* 544 U.S. 133, 134 (2005).

Since the state courts decided this claim on the merits, this Court's point of departure must be the state court decision. The last reasoned decision is that of the Court of Appeals. *State v. Williams,* 2007 Ohio 5577, 2007 Ohio App. LEXIS 4902 (Oct. 19, 2007). Regarding Petitioner's statements, the Court of Appeals found:

> [*P25] Originally, Detective Kenneth Schweinefus had interviewed Williams. Schweinefus began to read Williams his rights by using a standard form. Before he could finish reading, Williams requested an attorney. Schweinefus ceased questioning and left the room.
>
> [*P26] Detective Brian Pitchford of the Hamilton County Sheriff's Department interviewed Woodcock and Rosemond, who had named Williams as the shooter. When Pitchford brought a jail uniform into the interview room for Williams to change into before being transported to the jail, Williams told him that he wanted to speak to him. Pitchford asked him if he was referring to the murder, and Williams replied that he was. Pitchford told Williams several times that because he had requested an attorney, Pitchford could not speak to him unless he voluntarily waived his rights. Williams agreed to initiate a discussion.
>
> [*P27] Although Williams admitted that he, Rosemond, and Woodcock had ridden in Deger's cab from Avondale to Green Township, he initially denied knowing anything about the shooting. When Pitchford informed him that both Rosemond and Woodcock had said that he was the shooter, he said, "Bring them in front of me, and I'll tell you about the incident." When the police brought Woodcock into the room, Williams called him a "bitch" and a "fucking coney."
>
> [*P28] After this confrontation, Williams gave a taped statement to police. Pitchford advised him of his rights. Williams provided an account similar to Woodcock's but denied that Rosemond had known about the robbery and named Woodcock as the shooter.

-11-

[*P29]  After the interview was over, an evidence technician came in to take a DNA sample from Williams. Williams blurted out that he did not care "about that fucking cab driver." He added, "Live by the sword, die by the sword. I don't care about living or dying. I'll plead insanity. I did it before, when I did a robbery with 'Dre. Alls you have to do is look at some pictures and puzzles, act or give them false information."

[*P30]  Detective Andrew Guy of the Hamilton County Sheriff's Office rode in the van that transported Williams, Rosemond, and Woodcock to the jail. Guy overheard Williams tell Rosemond and Woodcock that he could not believe that they had implicated him. Williams said that the police did not have anything on him and that if Rosemond and Woodcock had not implicated him and if they had let Williams's uncle pick them up, they never would have been caught. He also told them not to say anything else and to tell their attorneys that the police had forced them to make statements implicating Williams.

[*P31]  Williams also said that he was going to pretend that he was insane and to tell jail authorities that he was going to kill himself. He again stated that he was going to fabricate an insanity defense by failing to solve simple puzzles. He went on to say that he did not care that police had found the gun because it did not have any fingerprints on it. He bragged that he was going to get a paid attorney and beat the charges, but that Woodcock and Rosemond were going to be convicted because they had talked to the police.

[*P32] Subsequently, Pitchford accompanied an evidence technician to the jail to get hair samples from Williams. At that time, Williams questioned Pitchford about why he was being charged with aggravated robbery and capital murder. After receiving a response to the question, Williams stated, "How can it be a robbery when I didn't get anything?"

*Id*. ¶¶ 25-32.

In deciding that the law did not require suppression of these statements, the court of appeals noted the requirement that a suspect who had said he wishes to deal with the police only through counsel is not subject to further interrogation unless he initiates the communication. *Id.* at ¶ 34, citing *Arizona v. Roberson*, 486 U.S. 675, 677 (1988), quoting *Edwards v. Arizona*, 451 U.S. 477,

484-485 (1981).  It further noted that the suspect must initiate dialogue himself and knowingly and voluntarily waive his right to counsel.  *Id.., citing, inter alia, Oregon v. Bradshaw,* 462 U.S. 1039, 1045-46 (1983).  Interpreting the factual evidence, the court found:

> [*P35]  The record shows that when Williams told Schweinefus that he wanted counsel, questioning ceased. When Pitchford went into the room later to give Williams a jail uniform, Pitchford did not interrogate him. Williams, without any prompting, specifically stated that he wanted to talk to him. Pitchford told him several times that he could not speak to him unless he waived his rights, yet Williams persisted in expressing his willingness to talk. Pitchford was not badgering him. To the contrary, he was respecting Williams's rights by telling him that he could not talk to Williams unless Williams waived his rights.

> [*P36]  Williams understood his right not to talk to police without a lawyer present and exercised that right when Schweinefus attempted to interview him. Later, when Williams stated he wanted to talk to Pitchford, Pitchford again advised him of his rights. Williams indicated that he understood his rights, but he refused to sign a waiver-of-rights form. Pitchford did not threaten or force Williams to make any statement. The record shows that Williams "evinced a willingness and a desire for a generalized discussion about the investigation."

> [*P37]  To a large extent, Williams is simply  arguing that the police officers' testimony was not credible. In a hearing on a motion to suppress, matters as to the credibility of witnesses are for the trier of fact to decide. The trier of fact may believe some, all, or none of a witness's testimony.  In this case, competent, credible evidence supported the trial court's factual findings that Williams had initiated further conversation with the police, and that he had voluntarily waived his right to counsel. Therefore, we must accept those findings. The trial court did not err in overruling Williams's motion to suppress, and we overrule his first assignment of error.

*Id*. at ¶¶ 35-37 (citations omitted).

In claiming that this conclusion should be reversed, Petitioner does not claim that the findings of fact made by the court of appeals are an unreasonable determination of the facts in light

of the evidence produced. See 28 U.S.C. §§ 2254(d)(2), (e)(1). *Cornwell v. Bradshaw*, 559 F.3d 398, 405 (6th Cir. 2009); *Mitchell v. Mason,* 325 F.3d 732, 737-38 (6th Cir. 2003); *Warren v. Smith,* 161 F.3d 358, 360-61 (6th Cir. 1998). This statutory presumption of correctness extends to factual findings made by state appellate courts on the basis of their review of trial court records. *Girts v. Yanai,* 501 F.3d 743, 749 (6th Cir. 2007); *Mason v. Mitchell,* 320 F.3d 604, 614 (6th Cir. 2003); *Brumley v. Wingard,* 269 F.3d 629, 637 (6th Cir. 2001), citing *Sumner v. Mata*, 449 U.S. 539, 546-47 (1981). Those findings are thus entitled to deference from this Court.

Petitioner focuses on what Detective Scheinefus told Mr. Williams about what he thought would happen to Williams through the court process (Traverse, Doc. No. 21, PageID 313). At the place cited in the transcript, the following testimony by Detective Scheinefus is given:

Q.      Okay, when he said he wanted an attorney, what did you and Detective Stock do?

A.      I let Mr. Williams know what I felt was going to happen to him through the court process.

Q.      Okay. And did any other interview take place after that? . . .

        After he said he wanted an attorney, did you eventually leave the room?

A.      Yes.

Q.      All questions ceased at that point?

A.      Yes, I asked him no further questions.

(Transcript at 314-315, attached to Traverse as Appendix, Doc. No. 21-1, PageID 319-320.)

There is nothing about what Scheinefus testifies he said which constitutes interrogation or speech intended to elicit responses. Petitioner criticizes the court of appeals for not repeating the line from the transcript about Scheinefus projecting what the court process would be, but offers no reference to evidence of the content of Scheinefus' comments. (Traverse, Doc. No. 21, PageID

-14-

314).  It is not an initiation of conversation about the crime for a defendant to inquire about the incidents of custody.  *Oregon v. Bradshaw*, 462 U.S. 1039, 1045-46 (1983).  But Petitioner cites no controlling authority from the Supreme Court to the effect that a police officer's describing the court process constitutes an initiation of interrogation.

Petitioner then admits that he initiated conversation with Detective Pitchford and that Pitchford reminded him several times about his invocation of his right to counsel (Traverse, Doc. No. 21, PageID 313).  Williams then claims that Pitchford "challenged" his statements, citing Tr. pp. 352-354 (Doc. No. 21-1, PageID 325-327).  No such challenges by Pitchford appear on those pages.  What does appear is Pitchford's testimony that Williams challenged Pitchford's statements that Rosemond and Woodcock had given him up.  Thereupon the detectives brought Woodcock and Rosemond in and they repeated their accusations to Williams face.

In decisions earlier this year, both the Supreme Court and the Sixth Circuit have dealt with the relevant questions. In *Berghuis v. Thompkins*, 560 U.S. ___, 130 S. Ct. 2250, 176 L. Ed. 2d 1098 (2010), the Court held that once a defendant has been given his *Miranda* warnings, he needs to invoke his right to remain silent to cut off interrogation; if he does not do so and later makes an admission, it is admissible against him.  In *Tolliver v. Sheets*, 594 F.3d 900 (6th Cir. 2010), citing *Miranda*, 384 U.S. at 478, the Sixth Circuit held "even if a suspect has invoked his right to remain silent, any information he then *volunteers* is admissible, provided it did not result from further interrogation. . . He cannot have it both ways: if he wanted to invoke his *right* to remain silent, he then needed to *remain* silent." *Id.* at 919.

The Court of Appeals decision on this claim is not an objectively unreasonable application of *Miranda, Edwards*, or *Oregon v. Bradshaw*.  The Second Ground for Relief is therefore without

merit.

## Ground Three

In his Third Ground for Relief, Petitioner asserts he received ineffective assistance of appellate counsel when his appellate attorney failed to raise his Confrontation Clause claim on direct appeal.

Respondent asserts this claim for relief is procedurally defaulted, and the Court agrees. For the reasons given under Ground One above, Petitioner adequately preserved this claim by making it part of a Rule 26(B) application and also by including it in his direct appeal to the Ohio Supreme Court. What Petitioner did not do, which is fatal to his claim, is appeal from denial of the Rule 26(B) application. He certainly could have done so. Given that the Rule 26(B) application was denied about six weeks before *State v. Davis* was decided, his case would have reached the Ohio Supreme Court just about the time of that decision. Given that it was the Hamilton County Court of Appeals which was reversed in *Davis* for entering a *res judicata* judgment which is almost verbatim the same as the same court's Rule 26(B) decision in this case, it would have been a very simple per curiam decision for the Ohio Supreme Court to make. But Petitioner did not take the appeal. *Davis* makes clear that the  fact the Ohio Supreme Court declined direct review does not preclude collateral review, either practically or as a matter of *res judicata*.

Ground Three for relief should therefore be dismissed with prejudice.

## Ground Four

-16-

In his Fourth Ground for Relief, Petitioner asserts he received ineffective assistance of trial counsel when his trial attorney failed to contemporaneously object to violation of his Confrontation Clause rights by admission of Rosemond's statements.

Respondent asserts this ground for relief is procedurally defaulted because it was not raised in the state courts until presented for the first time on delayed direct appeal to the Ohio Supreme Court (Answer/Return of Writ, Doc. No. 16, PageID 53). The Court agrees. A cursory examination of the assignments of error on direct appeal shows this claim was not among them. It is a claim which depends on the record, so it could not have been raised in a post-conviction petition under Ohio Revised Code § 2953.21; any such attempt would have met a successful *res judicata* defense.

Petitioner does not claim he raised this ground for relief on direct appeal, but asserts he preserved it by including it in his Rule 26(B) application. As set forth above at length under Ground One, claiming ineffective assistance of appellate counsel for omission of an assignment of error does not preserve the assignment itself for review on the merits.

Any possible argument by Petitioner that his default in presenting this claim on direct appeal is excused by ineffective assistance of appellate counsel is foreclosed by his procedural default on that claim as well. *Edwards v. Carpenter,* 529 U.S. 446 (2000).

## Conclusion

Grounds for Relief One, Three, and Four are procedurally defaulted and Ground Two is without merit. It is therefore respectfully recommended that the Petition herein be dismissed with prejudice.

July 9, 2010.

s/ **Michael R. Merz**
United States Magistrate Judge


### NOTICE REGARDING OBJECTIONS


Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).

-18-